## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **William Rivera Molina, personally and in representation of International Business Solutions; Ebano 155, Inc.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Casa La Roca, LLC; Charles Henry Eugene Vogel; Juanita Kay Vogel,**<br><br>**Defendants.** | Civil No. 21-1004 (GAG-GLS) |

## REPORT AND RECOMMENDATION

On July 14, 2021, Defendants Casa La Roca, LLC, Charles Henry Eugene Vogel, and Juanita Kay Vogel (collectively, "Vogel") filed a Motion for Contempt of Court and Motion for an Order Directing Production of Evidence ("Motion for Contempt/Motion for Order") requesting that the Court find Plaintiffs William Rivera Molina, International Business Solutions, and Ebano 155, Inc. (collectively, "Rivera-Molina") in contempt of Court for failure to comply with the Court's Order of July 1, 2021 for the deposit of all proceeds generated from the rental of the properties La Roca I, La Roca II and La Roca III (herein, the "Properties") from April 1, 2021 until July 6, 2021. Docket No. 130.[1] Vogel also requested that the Court order Rivera-Molina to produce certain documents that would enable the parties to adequately identify the proceeds generated from the rental of the Properties. Id.

---

[1] On September 13, 2021, Vogel filed another motion titled Further Motion for Contempt and Request for Order of Garnishment of Accounts at Docket No. 205. In part, the motion seeks an order of contempt against Rivera-Molina for failure to comply with the Amended Partial Stipulated Judgment which ordered Rivera-Molina to deposit all proceeds from the rentals of the Properties generated from July 6, 2021 to September 3, 2021. Id.; Docket No. 198. This motion was also referred to the undersigned. Docket No. 206. Because the arguments for contempt on account of the amounts deposited by Rivera-Molina are the same as those that were brought forth in the Motion for Contempt/Motion for Order, the undersigned addresses that potion of the motion in this Report and Recommendation. The request for order of garnishment of accounts is still in process of being briefed. That request will be addressed once the issue has been fully briefed.

The District Court referred the Motion for Contempt/Motion for Order to the undersigned for a Report & Recommendation as to the matter of contempt and for disposition of the discovery request. Docket No. 132; see also Docket No. 206. On August 9, 2021, the Court ordered Rivera-Molina to produce the documents requested by Vogel. Docket No. 153. For the reasons discussed below, the undersigned recommends that Vogel's request for the entry of an order finding Rivera-Molina in contempt be **GRANTED**.

## I.    Background

On January 14, 2021, Rivera-Molina filed a sworn Amended Complaint requesting that the Court issue a possessory injunction against Vogel for the alleged disturbance of their peaceful possession of the Properties, in alleged breach of the Termination Agreement signed by Rivera-Molina, its affiliated companies and Vogel.[2] Docket No. 9. Rivera-Molina also asserted a claim for breach of contract demanding specific performance and damages. Id. Vogel answered the Amended Complaint and filed a Verified Counterclaim requesting, among other remedies, the payment or reimbursement of all the repairs and costs purportedly incurred by Vogel in connection with the Properties, which Vogel alleges were to be paid by Rivera-Molina under the Termination Agreement. Docket No. 14.

On March 29, 2021, the Court issued a Memorandum Order concluding that Rivera-Molina were the factual possessors of the Properties until the date in which the Termination Agreement was set to expire on December 31, 2020 and determining that Rivera-Molina's possession or tenancy of the Properties was disturbed by Vogel. Docket No. 35. However, the Court also concluded that, after December 31, 2020, Rivera-Molina's possession of the Properties was in bad faith pursuant to Article 363 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §1423[3], and Rivera-

---

[2]    On April 3, 2019, Vogel, Rivera-Molina and DC Project Management, Corp. ("DC Project") executed a Termination of Verbal Partnership Agreement La Roca Operation and Maintenance Rental Agreement" ("Termination Agreement"). Docket No. 1, Exhibit 5. The parties agreed to terminate their prior partnership and for William Rivera-Molina and DC Project to continue providing services to Vogel— owner of the Properties in Fajardo— including, services of management and operation for short-term rental programs, cloud computing, advertising, and promotion, operation, and maintenance of the Properties, staffing and hospitality services, until December 31, 2020. Id. at ¶ 1. The Termination Agreement had an expiration date of December 31, 2020 but included *a force majeure* clause which provided that, under certain circumstances, the Termination Agreement could be extended for a term no greater than ninety (90) days. Id. at ¶ 9(l).

[3]    Article 710 of the Puerto Rico Civil Code of 2020, 31 P.R. Laws Ann. § 7828.

Rivera Molina *et al* v. Casa La Roca, LLC *et al.*
Civil No. 21-1004 (GAG-GLS)

Molina would thus be subject to the legal consequences of possessing the Properties in bad faith from that date on. Id. See 31 P.R. Laws Ann. §1424.

On April 1, 2021, Rivera-Molina regained possession of the Properties. On May 3, 2021, the undersigned recommended that, pursuant to Article 730 of the Puerto Rico Civil Code of 2020[4], the Court order Rivera-Molina to submit a detailed inventory of the proceeds from the rentals of the Properties since their possession on April 1, 2021, to deposit all such proceeds in an account with the Clerk of the Court, and to submit to the Court a detailed schedule of the rentals of the Properties for the next six (6) months, including expected proceeds from such rentals. Docket No. 64. On June 28, 2021, the District Judge issued an Opinion and Order adopting the Report and Recommendation at Docket No. 64. Docket No. 106. Consequently, on July 1, 2021, the undersigned entered the following Order: **"By Tuesday, July 6, 2021, [Rivera-Molina] must submit to the Court a detailed inventory of the proceeds of the rentals of the properties Casa La Roca I, II and III since their possession on April 1, 2021, and deposit any and all such proceeds in an account to be opened with the Clerk of the Court. [Rivera-Molina] must also submit to the Court a detailed schedule of the rentals of the three (3) properties for the next six (6) months, including expected proceeds from such rentals."** (the "July 1st Order"). Docket No. 114 (emphasis added).

On July 6, 2021, Rivera-Molina deposited thirty thousand dollars ($30,000.00) with the Clerk of the Court on account of the purported proceeds generated from the rentals of the Properties. Docket No. 119. Rivera-Molina also submitted a spreadsheet detailing the check-in and check-out rental dates of unidentified guests from April 1, 2021 to September 30, 2021. Docket No. 120, Exhibit 1. Per the spreadsheet, the proceeds from the rentals of all three Properties were the same per booking— $857.14— regardless of the individual amenities of each of the Properties, the number of nights rented per booking, or the dates of such rentals. Id.

On July 14, 2021, Vogel filed the Motion for Contempt/Motion for Order alleging that the amount deposited by Rivera-Molina could not correspond to the actual rental proceeds of the Properties because each of the Properties is different and rented at different rates depending on

---

[4]    Article 730 of the Puerto Rico Civil Code of 2020, 31 P.R. Laws Ann. § 7875, provides that a possessor in bad faith must pay the value of the fruits collected and those which the legitimate possessor would have been able to collect.

their amenities, and the proceeds vary depending on the platform used for booking and the number of nights each property is rented. Docket No. 130. Vogel alleged that the inventory of proceeds submitted by Rivera-Molina is not accurate because the Properties have historically generated proceeds in an amount that is over ten (10) times the amount deposited in Court by Rivera-Molina. Id. Vogel requested that the Court hold Rivera-Molina in contempt and order Rivera-Molina to produce the following documentary evidence:

1. All documentation and evidence from third party booking entities (Airbnb, VRBO, etc.) regarding proceeds and renter information (including any charts, diagrams, emails, excel or other spreadsheets, and any other correspondence or documents containing rental data) since April 1, 2021 onward.

2. All documentation and evidence from IBS' own website, Puerto Rico Rentals, regarding proceeds and renter information (including any charts, diagrams, emails, excel or other spreadsheets, and any other correspondence or documents containing rental data) since April 1, 2021 onward.

3. List of each and every renter during that 96-day period from April 1, 2021 to July 6, 2021, with their email addresses, postal addresses, telephone numbers and other contact information, and proceeds collected from each.

4. All cash or other payments received from renters since April 1, 2021 onward, and from which renter and for what amount, including bank transfer documents to show their deposits.

5. Copies of all bank account statements and a complete transaction history for each and every bank account associated with the rental of La Roca 1, La Roca 2 and/or La Roca 3 for the period April 1 to July 6, 2021. This request includes any and all accounts held by IBS or Mr. Rivera where money was received relating to the renal of the foregoing properties. Id.

On July 28, 2021, Rivera-Molina opposed the Motion for Contempt/Motion for Order alleging that the Court had not defined the term "proceeds" in its July 1st Order and that they complied with the July 1st Order by depositing what they deemed were the total proceeds from the rentals. Docket No. 147. Rivera-Molina informed that the proceeds were calculated "by taking the gross rental receipts received, and then deducting from this amount all the expenses and allowances associated with the rental business", which resulted in an amount of thirty thousand dollars

($30,000.00) between April 1, 2021 and July 6, 2021. Docket No. 147 at page 4. This total amount of "proceeds" was then divided by the number of bookings for the Properties, which resulted in a reported $857.14 per booking. Id. Vogel replied arguing that the July 1st Order did not authorize Rivera-Molina to calculate rental proceeds in such a manner, nor to make any deductions or offsets to the actual rental proceeds. Docket No. 150. And that Rivera-Molina did not submit any information as to the nature and the amounts deducted as "necessary expenses". Id.

On August 9, 2021, the undersigned granted Vogel's unopposed discovery request and ordered **Rivera-Molina to produce all the documentary evidence requested by the Vogel Family at page 17 of their Motion for Contempt/Motion for Order (herein, "August 9th Order")**. Docket No. 153. On August 23, 2021, Rivera-Molina filed (1) a spreadsheet titled Report of Sales on La Rocas 2021; (2) a spreadsheet titled Report of Expenditure on La Rocas 2021[5]; and (3) Banco Popular de Puerto Rico statements for the months of April 2021 to July 2021 for two accounts under the name of International Business Solutions, LLC. Docket No. 166, Exhibits 1-4. Both sides submitted supplemental briefs on the matter of contempt. Docket Nos. 153, 173 and 182.

On August 30, 2021, the parties agreed that Rivera-Molina would surrender the Properties to Vogel by September 3, 2021 and to the entry of a stipulated judgment on the eviction complaint in Civil No. 21-1144. Docket No. 191. Amended Partial Stipulated Judgment was entered ordering Rivera-Molina to surrender the Properties to Vogel, to deposit all proceeds generated from the rental of the Properties from July 6, 2021 to September 3, 2021, and to produce the documentary evidence ordered by the Court in its August 9th Order (the "Stipulated Judgment"). Docket No. 198. On September 3, 2021, Rivera-Molina deposited sixteen thousand one hundred eighteen dollars with twenty cents ($16,118.20) as the total amount of proceeds from the rental of the Properties between July 6, 2021 and September 3, 2021. Docket No. 201. Once again, Rivera-Molina deposited with the Clerk of the Court the purported proceeds of the rentals *minus* what they deem "expenses and allowances associated with the rental business". Id.

---

[5]        The Court notes a discrepancy in the dates reported in the "Report of Expenditure on La Rocas 2021". The Report states that $576,769.10 was "done spending" as of August 20, 2021; however, the summary in the bottom of the report states that $576,769.10 are the total expenses as of October 20, 2021. Docket No. 166, Exhibit 2.

## II.    Discussion

Civil contempt can be "imposed to compel compliance with a court order or to compensate a party harmed by non-compliance." United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005). The imposition of civil contempt is considered appropriate to enforce the "due and orderly administration of justice." Goya Foods, Inc. v. Wallack Management Corp., 290 F.3d 63, 78 (1st Cir. 2002) (quoting Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764 (1980)). The Court has broad discretion in determining the appropriate coercive remedy upon a finding of civil contempt. See Brown v. Colegio, 765 F. Supp.2d 133, 138 (D.P.R. 2011) (citing Goya, 290 F.3d at 21). In exercising its discretion, the Court "must fashion sanctions that will ensure compliance with the Court's orders and at the same time correct some of the damage done by their violations." Id. at 140. "A monetary sanction assessed for the purpose of compensating the complainant for losses sustained by reason of the contemnor's acts, as well as the imposition of attorneys' fees and costs, are within the universe of permissible sanctions for civil contempt." Latin American Music Co., Inc. v. Archdioceses of San Juan, 2007 WL 9677029 *4 (D.P.R.) (citing Goya Foods, 290 F.3d at 78). The standard of proof for holding a party in civil contempt is clear and convincing evidence. See Saccoccia, 433 F.3d at 27-28 (citing McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949)). To find a party in civil contempt, the Court must find that: (1) the alleged contemnor had notice that he was within the court's ambit, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the order was violated. See Saccoccia, 433 F.3d at 26-27.

There is no question that the first and third prongs of the foregoing test are met in this case. Rivera-Molina was within the Court's ambit and had adequate notice of the July 1st Order and the August 9th Order. And Rivera-Molina has not alleged nor offered any evidence to show their inability to deposit all proceeds generated from the rentals of the Properties (as required by the July 1st Order), or their inability to submit the documentary evidence required to corroborate the source and accuracy of these proceeds (as directed in the August 9th Order). The Court thus turns its attention to the second and fourth prongs of the test: whether the July 1st Order and August 9th Order were clear and unambiguous and whether Rivera-Molina complied with the orders.

"For a party to be held in contempt, it must have violated a clear and unambiguous order that left *no reasonable doubt* as to what behavior was expected and who was expected to behave in the indicated fashion." Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991) (emphasis

provided). The test is whether the alleged contemnor is "able to ascertain from the four corners of the order precisely what acts are forbidden." Saccoccia, 433 F.3d at 28. Because the consequences of civil contempt are severe, "[w]hen applying the test, the court must 'read any ambiguities or omissions in […] a court order as redounding to the benefit of the person charged with contempt." Id. (quoting NBA Properties, Inc. v. Gold, 896 F.2d 30, 32 (1st Cir. 1990)); see also Pina v. Feliciano-Rivera, 2017 WL 2889661 *3 (D.P.R.). To determine whether the alleged contemnor has violated an order that is clear and unambiguous, "the Court of Appeals for the First Circuit has 'sometimes combined' prongs two and four." Project B.A.S.I.C. v. Kemp, 947 F.2d at 17; see also Pina v. Feliciano-Rivera, 2017 WL 2889661 at *2.

      **1.      The July 1st Order**

      The July 1st Order instructed Rivera-Molina to: (1) submit to the Court a detailed inventory of the proceeds from the rentals of the Properties since their possession on April 1, 2021, (2) to deposit all such proceeds with the Clerk of the Court, and (3) to submit a detailed schedule of the rentals of the Properties for the next six (6) months, including expected proceeds from such rentals. Docket No. 114. Rivera-Molina alleges that they complied with the Court's July 1st Order by depositing $30,000.00 because the Court did not define the term "proceeds" in its order. Rivera-Molina argues that because the July 1st Order was unclear as to what had to be deposited with the Clerk of the Court, a finding of contempt is unwarranted. The July 1st Order was clear and unambiguous. Rivera-Molina ignored it at their peril.

      The order of the Court was straightforward. It instructed Rivera-Molina to deposit all proceeds. No mention of expenses, costs, deductions, setoffs, or compensation was made in the July 1st Order. Indeed, the order does not include the word "net" in characterization of the word proceed. According to the Black's Law Dictionary, "proceeds" is "the value of land, goods, or investments when converted into money; the amount of money received from a sale." See Black's Law Dictionary, Eleventh Edition (2019). Black's Law Dictionary makes a distinction between the definition of the word "proceeds" and the term "net proceeds". It defines "net proceeds" as "the amount received in a transaction *minus the costs of the transaction, such as expenses and commissions*." Id. (emphasis provided). It is thus only reasonable to conclude that if the July 1st Order instructed Rivera-Molina to deposit "any and all such proceeds" without any mention of the word "net", the July 1st Order unambiguously ordered the deposit of "the amount of money

received from" rentals of the Properties without deductions or set offs on account of costs or expenses.

The provisions of the 2020 Puerto Rico Civil Code pertaining to the payment of proceeds by bad faith possessors and to the reimbursement of expenses to such bad faith possessors provide support for the conclusion that the July 1st Order could not have been intended to allow deductions to the rental proceeds by Rivera-Molina **on their own accord and prior** to depositing the proceeds with the Court. The only reasonable interpretation of the July 1st Order and the Stipulated Judgment is that Rivera-Molina was to deposit all proceeds generated from the rental of the Properties from April 1, 2021 until September 3, 2021.

A possessor's rights with regards to the collection of fruits and reimbursements of expenses depends upon his classification as a good or bath faith possessor. See <u>García Santiago v. Industrial & Marine Service</u>, 2019 WL 4553415 (TA June 28, 2019). Article 730 of the Puerto Rico Civil Code of 2020[6] establishes that the possessor in bad faith must pay the legitimate possessor "the value of the fruits collected and those which the legitimate possessor would have been able to collect." 31 P.R. Laws Ann. § 7875. Article 728 of the Puerto Rico Civil Code of 2020 establishes that possessors have a right to the payment of necessary expenses but only the possessor in good faith may retain the property until those necessary expenses are compensated. 31 P.R. Laws Ann. § 7873. While Article 728 of the Puerto Rico Civil Code allows both good and bad faith possessors to obtain compensation for necessary expenses, only the good faith possessor may retain the thing or property at issue until obtaining reimbursement for necessary expenses. See <u>id</u>.; <u>Rodríguez-Olleros Avilés v. Castillo Félix,</u> 2018 WL 4491119 (TA June 11, 2018). The right conferred to the good faith possessor to retain the thing serves to assure the reimbursement of necessary expenses. <u>See</u> J. Puig Brutau, <u>Fundamentos del Derecho Civil</u>, Tomo III, Vol. 1, pg. 115. No such right is afforded to a bad faith possessor, whose right to claim reimbursement of necessary expenses is intended solely to avoid unjust enrichment by the legitimate possessor. <u>Id</u>. at page 118 (<u>citing</u> J. Castán, <u>Derecho civil español, común y foral</u>, 8va ed., Vol. II, pg. 421); <u>see also</u> <u>Román Benítez v. Rivera</u>, 43 D.P.R. 535 (1932) (the Civil Code severely punishes the bad faith possessor; however,

[6] The new Civil Code of Puerto Rico became effective on November 28, 2020; therefore, the payment of fruits collected between April 1, 2021 and September 3, 2021, as well as the reimbursement of necessary expenses, are governed by Articles 728 and 730 of the 2020 Puerto Rico Civil Code.

this severity cannot reach the extreme of enriching the legitimate possessor at the expense of the bad faith possessor); see also Rivera v. Meléndez, 72 D.P.R. 432, 443 (1951).

Article 728 of the 2020 Puerto Rico Civil Code goes on to define what are "necessary expenses". 31 P.R. Laws Ann. § 7873. It defines "necessary expenses" as "those that maintain the thing or ensure [that the thing] remains in its original state or for the use it was destined." Id. Necessary expenses are thus "indispensable for the conservation of the thing against the effects of time and nature". Ruiz Pabón v. Pérez Rosario, 2008 WL 2037442 (TA March 31, 2008). And necessary expenses are those incurred to prevent the thing from being lost or damaged; those required for the subsistence of the thing. See J. Manresa y Navarro, Comentarios al Código Civil Español, 6ta ed., Tomo IV, pgs. 293-294; see also Ruiz Pabón, *supra* (repairs to maintain the normal economic functioning of the thing are necessary expenses). Article 728 of the 2020 Puerto Rico Civil Code also distinguishes "necessary expenses" from "useful expenses". 31 P.R. Laws Ann. § 7873. It defines "useful expenses" as those that increase or assure the value of the thing or property. Id.; Ruiz Pabón, *supra*; see also P.R.F.S. v. Promoexport, 187 D.P.R. 42, 92 (2012) (citing J. Castán Tobeñas, Derecho civil español, común y foral, 7ma ed., Tomo I, pgs. 621-622). It also provides that only good faith possessors have a right to the repayment of "useful expenses". 31 P.R. Laws Ann. § 7873. Bad faith possessors do not have a right to recoup "useful expenses" and, much less, a right to retain possession of the property at issue until reimbursement of those expenses. Id.; López Díaz v. Compañía de Fomento Industrial de Puerto Rico, 2008 WL 1786995 (TA Feb. 12, 2008); Concepción v. Latoni, 62 D.P.R. 104 (1943).

There is no controversy that, after regaining possession of the Properties on account of the Court's Memorandum Order of March 29, 2021, Rivera-Molina retained the Properties as bad faith possessors and that, precisely because Rivera-Molina were bad faith possessors, they were ordered to deposit in Court the proceeds from the rentals generated after April 1, 2021. See Docket Nos. 64 and 106. As explained above, while a bad faith possessor may request reimbursement for necessary expenses, he may not retain possession of the property pending reimbursement of those expenses. Naturally, the issue here was not retention of the possession of the Properties by Rivera-Molina since their possession was reinstated by virtue of the Memorandum Order. However, to the extent that the July 1st Order was issued to address Rivera-Molina's bad faith possession and to assure that Vogel, as a legitimate possessor, could eventually recoup the "value of the fruits collected and those which the legitimate possessor would have been able to collect" it is

unreasonable to conclude that, when the July 1st Order instructed Rivera-Molina to deposit the rental proceeds of the Properties it was allowing Rivera-Molina to make deductions for purported necessary expenses. The only reasonable conclusion is that because the Puerto Rico Civil Code does not allow possessors in bad faith to retain property pending reimbursement for necessary expenses, the July 1st Order did not allow Rivera-Molina to *retain* rental proceeds on account of purported necessary expenses.

Furthermore, even if Rivera-Molina did legitimately believe that the July 1st Order allowed for the deposit of proceeds *minus expenses*, it is evident that Rivera-Molina's deductions included other expenses which could not have been "necessary". The Report of Expenditure on La Rocas 2021 submitted by Rivera-Molina fails to identify which of the deducted expenses were "necessary" to ensure that the Properties remained in their original state or for the use for which they were destined. And a review of the documents submitted by Rivera-Molina reveals that most of the expenditures claimed by Rivera-Molina could not likely be considered "necessary" under the Puerto Rico Civil Code. For instance, Rivera-Molina deducted $22,176.00 for office rent; $770.13 in offices expense; $3,644.22 in communication expense; $7,231.56 in marketing; $12,221.14 in channel fee; $133,004.69 in software for property management; $1,471.81 in merchant charge; $5,500 in customer support apparently provided by a host; $19,440 in services rendered by administration personnel such as a clerk and management staff; $15,500 for an accountant; $122,758.34 in legal expenses; $125,000.00 in development and accessory tourist plan; $3,368.85 in laundry services; $417.99 in security; $22,209.00 for operation staff (a supervisor, a host and a chef); $300.89 in diesel; $462.00 in gas; $925.80 in internet; and $15,656.00 in insurance. From the limited description provided by Rivera-Molina, these expenses can hardly be deemed to have maintained the Properties in their original state or to have been a "necessary expense" as defined in Article 728 of the Puerto Rico Civil Code. See e.g., García v. Aguayo, 45 D.P.R. 845 (1933)(a bad faith possessor's commission as an administrator of the thing retained is not considered a necessary expense); Rodríguez Hermanos v. Vda. de Cintrón, 66 D.P.R. 722 (1946) (payment of wages to an agent, compensation to a collector, and office expenses are not considered necessary expenses). And, as a bad faith possessor, Rivera-Molina would not have been entitled to the reimbursement of "useful expenses". As such, it is evident that Rivera-Molina's interpretation of the July 1st Order was unreasonable for it would have granted Rivera-

Molina more rights than those conferred to bad faith possessors under Article 728 of the Puerto Rico Civil Code.

The July 1st Order and the Stipulated Judgment have only one reasonable interpretation. Rivera-Molina was to deposit *all proceeds* generated from the rental of the Properties from April 1, 2021 to September 3, 2021. Per the Report of Sales on Las Rocas 2021 submitted by Rivera-Molina, the *actual* proceeds from the rental of the Properties between April 1, 2021 and September 3, 2021— just in web-based platforms— was more than ten (10) times the amount deposited in Court; $46,118.20. See Docket No. 166 at Exhibit 1; Docket No. 201 at Exhibit 2. Rivera-Molina should be held in contempt of Court.

### 2.    August 9th Order

Pursuant to the August 9th Order, Rivera-Molina had to produce: (1) all documentary evidence generated by third party booking entities (such as Airbnb and VRBO) regarding proceeds and renter information; (2) all documentary evidence generated by Puerto Rico Rentals regarding proceeds and renter information; (3) list of renters from April 1 to July 6, including personal contact information; (4) a detail of payments in cash or other non-web based payments received for the payment of rentals from April 1 to July 6; and (5) copies of bank statements and transaction history associated with the rentals of the properties, including accounts held by William Rivera-Molina and/or IBS. Docket No. 153.

Rivera-Molina did not produce one single report or document generated by third party booking sites such as Airbnb, VRBO or HomeAway, nor a single report or document generated by their own site, Puerto Rico Rentals. Their production of a spreadsheet generated by them— not by third parties— falls short. The purpose of the request for documents generated by third parties was precisely to corroborate the proceeds that were being reported by Rivera-Molina. That Rivera-Molina decided to collect the information from third parties and summarize it in a document is insufficient. Rivera-Molina blatantly failed to comply with items 1 and 2 of the Court's August 9th Order. Rivera-Molina did not produce renter information. The August 9th Order unambiguously required Rivera-Molina to produce the renter information to Vogel. If Rivera-Molina had concerns regarding the privacy of renter information or commercial secrets, they could have pursued a confidentiality agreement with Vogel or a protective order from the Court. Rivera-Molina did not do either and simply ignored the Court's August 9th Order. Rivera-Molina also failed to produce the detail of payments in cash or other non-web-based payments received for the payment of

**Rivera Molina *et al* v. Casa La Roca, LLC *et al.***
**Civil No. 21-1004 (GAG-GLS)**

rentals, which was item number 4 of the August 9th Order. And Rivera-Molina did not produce any bank statements and transaction history associated with the rentals of the Properties for accounts in the name of William Rivera-Molina. It thus follows that Rivera-Molina failed to comply with the Court's August 9th Order and that a finding of contempt of Court is warranted.

### III.    Conclusion

The July 1st Order indisputably instructed Rivera-Molina to deposit all proceeds from the rentals of the Properties from April 1, 2021 onward. Rivera-Molina also failed to fully comply with the production required in the Court's August 9th Order. The undersigned thus recommends that Vogel's request to find Rivera-Molina in contempt of Court be **GRANTED** and that Rivera-Molina be ordered to pay a fine of two thousand dollars ($2,000.00) to be deposited with the Clerk of the Court, as well as all attorneys' fees and costs incurred by Vogel in the prosecution of this matter; itemization of expenses, hours, and fees to be submitted by Vogel. The undersigned further recommends that the Court enter an order compelling Rivera-Molina to deposit all proceeds generated from the rental of the Properties from April 1, 2021 until September 3, 3021, and to submit all the documentary evidence included in the Court's August 9th Order, within five (5) calendar days or face the imposition of additional sanctions.

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have **fourteen (14) days** to file any objections to this Report and Recommendation. Failure to file timely and specific objections within the specified time waives the right to appeal this order. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F. 2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Services, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 16th day of September 2021.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge