IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILLIAM RIVERA-MOLINA ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> CASA LA ROCA, LLC ET AL., <br><br> Defendants. | CIV. NO. 21-1004 (SCC) |

**OPINION AND ORDER**

Casa La Roca, LLC, Charles Henry Eugene Vogel, and Juanita Kay Vogel (collectively, "Casa La Roca") have moved the Court to hold William Rivera-Molina in contempt[1] for failing to comply with our orders instructing him to deposit with the Clerk of Court all proceeds generated from three rental properties and to produce specific documents related to them. Magistrate Judge López-Soler has recommended that

---

1. Casa La Roca has also asked us to garnish and/or attach Rivera-Molina's bank accounts. Docket No. 205. But that portion of its motion is still in the briefing process. Docket No. 207, pg. 1 n.1. So we do not address it.

we grant this motion. Rivera-Molina has objected to her Report and Recommendation ("R&R"). For the reasons below and those set forth in the magistrate judge's well-reasoned R&R, we adopt her R&R in full and grant Casa La Roca's motion to hold Rivera-Molina in contempt.

## I.   BACKGROUND

Rivera-Molina brought this lawsuit against Casa La Roca, claiming that it had breached their contract concerning three rental properties. Docket No. 1. Casa La Roca later filed an action against Rivera-Molina to evict him from the properties. No. 21-1144, Docket No. 1. We have consolidated these cases. Docket No. 41.

On July 1, 2021, we ordered Rivera-Molina to deposit with the Clerk of Court all rental-property proceeds generated since April 1, 2021. Docket No. 114. On July 6, he deposited $30,000.00 "in compliance with [our] [o]rder." Docket No. 119, pg. 2. Casa La Roca then moved the Court to hold him in contempt and order him to produce documents concerning the rental-property proceeds. Docket No. 130. It argued that

Rivera-Molina had not complied with our order because these three rental properties had historically generated much more than $30,000.00 in a three-month period. *Id.* at 3. We granted Casa La Roca's motion in part: We ordered Rivera-Molina to produce documents concerning the rental-property proceeds but allowed supplemental briefing on Casa La Roca's request to hold him in contempt. Docket No. 153. Rivera-Molina filed a few documents concerning these proceeds. Docket No. 166. And both parties submitted supplemental briefing. Docket Nos. 173, 182.

Casa La Roca had also moved the Court to order Rivera-Molina to deposit additional rental-property proceeds. Docket No. 155. We granted its motion, ordering him to deposit all rental-property proceeds from July 6 (the date of his prior deposit, Docket No. 119) to August 30, 2021. Docket No. 185. At a later status conference, the parties stipulated to a partial judgment resolving the eviction action. Docket No. 191. One of the terms of that partial judgment is that Rivera-Molina must deposit all rental-property proceeds from July 6,

2021, to September 3, 2021, and produce all documents that we had ordered earlier. *Id.* at 2; Docket No. 198, pg. 2. Rivera-Molina then deposited $16,118.20 "in compliance" with this judgment. Docket No. 201. Along with this sum, he also submitted a document showing that, by his own calculation, the rental properties had generated $652,342.23 in proceeds since April 1, 2021. Docket No. 201-2. But he deposited only $16,118.20 because the rest, he said, had been spent on expenses. Docket No. 201-3.

Casa La Roca moved the Court again to hold Rivera-Molina in contempt because he had deposited only $46,118.20 ($30,000.00 at Docket No. 119 and $16,118.20 at Docket No. 201) yet his own documents reflected that he had collected $652,342.23 from renting the properties. Docket No. 205. The magistrate judge issued a R&R recommending that we grant this motion along with its original motion to hold him in contempt. Docket No. 207. Then, after she issued her R&R, Rivera-Molina deposited another $327,015.15 and filed additional documents because, he says, it is now clear to him

how to calculate proceeds. Docket No. 214. But he still deducted expenses from the proceeds because, he claims, the magistrate judge recognized in her R&R his right to retain necessary expenses. *Id.* at 4. He then filed objections to her R&R. Docket No. 220.

## II.   CIVIL CONTEMPT

A party moving for civil contempt must show by clear and convincing evidence that "(1) the alleged contemnor had notice of the order, (2) 'the order was clear and unambiguous,' (3) the alleged contemnor 'had the ability to comply with the order,' and (4) the alleged contemnor violated the order." *Rodríguez-Miranda v. Benin*, 829 F.3d 29, 46 (1st Cir. 2016) (quoting *Hawkins v. Dep't of Health & Hum. Servs. for N.H.*, 665 F.3d 25, 31 (1st Cir. 2012)). Rivera-Molina has objected to two portions of the magistrate judge's R&R: First, her conclusion that the orders at issue were "clear, definite, and unambiguous," Docket No. 220, pg. 5, and second, her conclusion that he violated them, *id.* We review de novo the

portions of the R&R that he has objected to.[2] 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b)(3); *ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*, 951 F.3d 41, 46 (1st Cir. 2020). But before we turn to our de novo review, we dispose of a few of Rivera-Molina's arguments.

We disregard Rivera-Molina's self-serving statement that he had a good-faith belief that the amount he deposited with the Court "represented the proceeds generated" from the rental properties. Docket No. 220, pg. 3. For it is "firmly

---

2. Federal Rule of Civil Procedure 72 sets forth two standards of review to evaluate a magistrate judge's determinations. Her determinations as to non-dispositive matters are set aside only if they are "clearly erroneous or [are] contrary to law," Fed. R. Civ. P. 72(a), while her determinations as to dispositive matters—when properly objected to—are reviewed de novo, Fed. R. Civ. P. 72(b). We believe that contempt is a dispositive matter because it is "'a separate and independent proceeding at law' that is not part of the original action." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (quoting *Bray v. United States*, 423 U.S. 73, 75 (1975)). We, therefore, review de novo the portions of her R&R that Rivera-Molina has objected to. *See Cardell Fin. Corp. v. Suchodolski Assocs.*, 896 F. Supp. 2d 320, 324 (S.D.N.Y. 2012) (reviewing a magistrate judge's civil contempt report de novo). We note as well that we referred Casa La Roca's contempt motions to the magistrate judge for a report and recommendation, Docket Nos. 132, 206—she did not certify this matter to the Court. So 28 U.S.C. § 636(b)(1)(B) is the statutory basis for her authority as opposed to § 636(e)(6)(B).

established in this circuit that good faith is not a defense to civil contempt." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002). He also states that his actions do not constitute contempt because "he had no intention to disobey the Court['s] [o]rders." Docket No. 220, pg. 5; *see also id.* at 8 ("[Casa La Roca] has failed to show that William Rivera Molina purposely disobeyed orders issued by the Court."). But "the absence of willfulness does not relieve from civil contempt." *McComb v. Jacksonville Paper, Co.*, 336 U.S. 187, 191 (1949). His alleged good faith and lack of willful disobedience do not absolve him of contempt.

### A. Orders to Deposit All Rental-Property Proceeds

The Court ordered Rivera-Molina multiple times to deposit with the Clerk of Court all proceeds generated by the rental properties since April 1, 2021. He, however, deposited only $46,118.20 even though his own documents reflected that he had collected $652,342.23 in proceeds. Rivera-Molina decided to subtract "expenses" from this sum and deposit only the remaining balance with the Court. Our orders were

unclear, he says, because they did not give him "specific guidance" as to how to calculate "proceeds." Docket No. 220, pg. 5. So, his argument goes, he cannot be faulted for violating them.

The "clear and unambiguous" prong of the civil-contempt analysis requires "that the words of the court's order have clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based*." *United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005). Our orders, in other words, must have left "no reasonable doubt" that Rivera-Molina would violate them by depositing with the Clerk of Court only $46,118.20—*i.e.*, $652,342.23 in rental-property proceeds less $589,427.31 in expenses, $13,535.01 in "State Income," and $3,261.71 in "Municipal Patents." *See id.*; Docket No. 201-1. It, therefore, is necessary to recite the language of our orders.

We first ordered Rivera Molina to "deposit any and all such proceeds ['of the rentals of the properties Casa La Roca I, II and III since [his] possession on April 1, 2021'] in an account to be opened with the Clerk of the Court." Docket No.

114. We then ordered him to "deposit with the Clerk of the Court the rental proceeds from July 6, 2021 until today [August 30, 2021] no later than September 3, 2021." Docket No. 185. This order appeared again as part of the stipulated partial judgment disposing of the eviction action: "By September 3, 2021, William Rivera Molina will deposit with the Clerk of the Court all proceeds generated in the rental of the three (3) properties from July 6, 2021 until September 3, 2021." Docket Nos. 191, 198, pg. 2. Rivera-Molina had been ordered to deposit with the Clerk of Court all rental-property proceeds generated from April 1, 2021, to September 3, 2021.

The crux of Rivera-Molina's objection to the magistrate judge's R&R is that the word "proceeds" is unclear and open to multiple interpretations, such that he needed specific guidance on how to calculate it. Docket No. 220, pg. 5; *see also id.* at 4 (complaining of the lack of a "clear definition of what constitute[s] 'proceeds' in [our] [o]rders"). Black's Law Dictionary defines "proceeds," which it distinguishes from net proceeds, as "the amount of money received from a sale."

RIVERA-MOLINA V. CASA LA ROCA, LLC                                       Page 10

*Proceeds*, BLACK'S LAW DICTIONARY (11th ed. 2019). Net proceeds, in contrast, is defined as "the amount received in a transaction minus the costs of the transaction (such as expenses and commissions)." *Id.* Other dictionaries define proceeds similarly. *See, e.g.*, STEPHEN MICHAEL SHEPPARD, THE WOLTERS KLUWER BOUVIER LAW DICTIONARY DESK EDITION (2012) (defining proceeds as "Revenue received. Proceeds are the money or value received from the sale, exchange, collection or other disposition of property, services, or claims."); *Proceeds*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/proceeds (last visited Dec. 6, 2021) ("The amount of money received from a particular event or activity or when something is sold."); *Proceeds*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/proceeds (last visited Dec. 6, 2021) (defining proceeds, in the context of sales, as "the total amount brought in"); *see also SEC v. Tambone*, 597 F.3d 436, 443 (1st Cir. 2010) (stating that "[o]ne reference point for determining the ordinary meaning of a word is its accepted dictionary

definition" and relying on Black's Law Dictionary and Webster's Third New International Dictionary). Our orders, therefore, were clear: Rivera-Molina had to deposit with the Clerk of Court all proceeds, or the amount of money received, from renting the properties.

Moreover, although there is no reasonable doubt from the "four corners" of our orders that Rivera-Molina would violate them by depositing only a small fraction of the rental-property proceeds, *see Saccoccia*, 433 F.3d at 28, their context confirms this plain meaning. Our orders stemmed from our earlier determinations that he is a bad-faith possessor of the rental properties, Docket No. 35, pg. 6, and that he must provide all rental-property proceeds as a provisional remedy, Docket No. 64, pg. 8. One of the consequences of bad-faith possession under Puerto Rico law is that the bad-faith possessor must pay to the legitimate possessor the value of the fruits received from the property and the value of any fruits the legitimate possessor could have received. P.R. Laws

Ann. tit. 31, § 7875.³ And, although the bad-faith possessor has the right to be paid or reimbursed the necessary expenses for maintaining the property, P.R. Laws Ann. tit. 31, § 7873, our order granting Casa La Roca's motion for a provisional remedy made no mention of subtracting expenses, *see* Docket No. 64. That is because Casa La Roca moved the Court for a provisional remedy of the fruits received from the property under P.R. Laws Ann. tit. 31, § 7875. *See* Docket No. 39, pg. 6. No reasonable person—let alone a litigant represented by counsel—would believe that our orders premised on § 7875 somehow implicitly incorporated § 7873.

Finally, in any event, Rivera-Molina would be in civil contempt even under his unreasonable reading of our orders. Recall that the rental properties generated $652,342.23 in proceeds—yet he deposited only $46,118.20. Necessary

---

3. P.R. Laws Ann. tit. 31, § 1470, has been repealed and replaced by P.R. Laws Ann. tit. 31, §§ 7873, 7874, 7875. *See* Law No. 55 of June 20, 2020. The new provisions are substantively identical to the prior one. The new provisions were in force at the time that this lawsuit was filed and during the relevant conduct of the parties, so we rely on those provisions.

expenses are those that help maintain the property or ensure that it remains in its original state. P.R. Laws Ann. tit. 31, § 7873. We note just a few of his expenses to show that they far exceed the boundaries of § 7873: $125,000.00 for a "Development and Accessory Tourist Plan," $133,004.69 for "Properties Management Software," and $122,758.34 for "Legal Expense." Docket No. 201-1. It is clear that Rivera-Molina has made a mockery of the Court's orders. We hold him in civil contempt.

### B. *Orders to Produce Documents Related to the Proceeds*

We ordered Rivera-Molina to produce these documents:

> 1) All documentation and evidence from third party booking entities . . . regarding proceeds and renter information . . . since April 1st, 2021 onward; 2) All documentation and evidence from [Rivera-Molina's businesses'] own website . . . regarding proceeds and renter information . . . since April 1st, 2021 onward; 3) List of each and every renter during that 96-day period from April 1st, 2021, to July 6th, 2021, with their email addresses, postal addresses, telephone numbers and other contact information, and proceeds collected from each; 4) All cash or other payments received from renters since April 1st, 2021 onward, and from which

> renter and for what amount, including bank transfer documents to show their deposits; 5) Copies of all bank account statements and a complete transaction history for each and every bank account associated with the rental of La Roca 1, La Roca 2 and/or La Roca 3 for the period April 1 to July 6, 2021. This request includes any and all accounts held by [Rivera-Molina or his business] where money was received relating to the rental of the foregoing properties.

*See* Docket No. 130, pg. 17; Docket No. 153 (ordering defendants to "produce all documents listed in page 17 of Docket No. 130"); Docket No. 185 (ordering Rivera-Molina "to continue making monthly deposits of all proceeds and file the documents required by the Court at Docket No. 153"); Docket Nos. 191, 198 (including as a term of the stipulated partial judgment that Rivera-Molina must "file the documents required by the Court at Docket No. 153, as instructed at Docket No. 185"). He has filed with the Court only two spreadsheets he prepared (gross rental receipts and expenses) and two bank-account statements in Spanish. Docket Nos. 166, 166-1, 166-2, 166-3, 166-4.

Rivera-Molina argues again that the orders were unclear.

Docket No. 220, pg. 5. But he does not develop this argument at all. To satisfy the "clear and unambiguous" prong of the civil-contempt analysis, our orders must have left "no reasonable doubt" that Rivera-Molina would violate them by submitting only two spreadsheets that he prepared himself and two Spanish-language exhibits. *Saccoccia*, 433 F.3d at 28.

We ordered Rivera-Molina to produce documents from third parties to verify his rental-property accounting, the names and contact information of renters, and his bank-account statements. We received two spreadsheets he prepared himself and bank-account statements in Spanish. He completely failed to give us the third-party documents, documents from his website, name and contact information for the renters, and the bank-account statements that we asked for. *See* D.P.R. Civ. R. 5(c) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English."). The Court's orders are clear, and there is no reasonable doubt that he would violate them by

providing only two spreadsheets he prepared and two Spanish-language bank-account statements that do not comply with our local rules. We, therefore, hold him in civil contempt for failing to comply with these orders.

### III. CONTEMPT SANCTIONS[4]

Before we issue sanctions, we briefly explain why Rivera-Molina's filings after the magistrate judge issued her R&R do not absolve him of civil contempt. After she issued her R&R, Rivera-Molina deposited $327,015.15 with the Clerk of Court and filed additional documents. Docket No. 214. He argues that he can no longer be held in civil contempt. But he has still not complied with our orders.

He first misconstrues the magistrate judge's R&R, claiming that it affirms his right to unilaterally subtract necessary expenses from the rental-property proceeds. *Id.* at 4. We do not look kindly on this deliberate mischaracterization. She

---

4. We did not hold a civil-contempt hearing because there is "no genuine issue of material fact." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 77 (1st Cir. 2002) (stating that a civil-contempt hearing is a "waste of time" where there is "no genuine issue of material fact").

plainly said that our orders "did not allow Rivera-Molina to *retain* rental proceeds on account of purported necessary expenses." Docket No. 207, pg. 10. She went on to discuss necessary expenses only to show that he did not comply with our orders even under his unreasonable reading of them because he withheld far more than necessary expenses. *See id.*

He then argues that he has now complied with our orders because he has deposited all rental-property proceeds less the necessary expenses that, he says, he is entitled to retain. Docket No. 214, pg. 4. But, again, our orders did not tell him to deposit the net proceeds—they told him to deposit the proceeds. Rivera-Molina, therefore, has still not complied with our orders.

He states next that he has now complied with our orders to produce documents related to the rental-property proceeds. Docket No. 214, pg. 5. But he has only provided a few of the renters' contact information. And his bank-account statements are still in Spanish and, thus, do not comply with the local rules. *See* D.P.R. Civ. R. 5(c). We have not evaluated

these documents to determine whether they comply with other parts of the orders. That is because the ways that we have listed are sufficient to show that he has still not fully complied with them.

We turn now to sanctions. But we first make clear that we are not punishing Rivera-Molina for his noncompliance—we simply want to "nudge" him to comply with our orders. *See AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015). The purpose of civil contempt is two-fold: "to coerce the [contemnor] into compliance with the court's order" and "to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947). Attorney's fees and costs are a "commonplace sanction for civil contempt." *Goya Foods*, 290 F.3d at 78. And a fine, if not compensatory, is allowed only if the contemnor has the "subsequent opportunity to reduce or avoid the fine through compliance." *Int'l Union v. Bagwell*, 512 U.S. 821, 829 (1994).

After careful consideration, we impose on Rivera-Molina a conditional fine of two-thousand dollars ($2,000.00) to be

deposited with the Clerk of Court *only if* he does not comply with our orders by December 13, 2021. To be clear, he must deposit with the Clerk of Court all rental-property proceeds generated from April 1, 2021, to September 3, 2021. He shall not subtract anything, including necessary expenses, from these proceeds. And he will produce all the documents related to the rental-property proceeds, as previously ordered. *See* Docket Nos. 153, 191, 198. If he does not comply with these requirements by December 13, 2021, he must pay the $2,000.00 fine and an additional $500.00 fine for each day after December 13, 2021, that he remains noncompliant.

Moreover, to compensate Casa La Roca for its losses incurred seeking his compliance with the orders, we order Rivera-Molina to pay its attorney's fees and costs. Casa La Roca may file a motion seeking the attorney's fees and costs it incurred seeking civil contempt. This motion must include an itemized list of its hours, hourly rate, and costs incurred drafting and filing its contempt motions, reviewing docket filings related to these motions, and drafting and submitting

its other filings related to these motions.

## IV.  Conclusion

In sum, we adopt in full Magistrate Judge López-Soler's Report and Recommendation (Docket No. 207). We **GRANT** Casa La Roca's motions to hold Rivera-Molina in contempt (Docket Nos. 130, 205). And we **ORDER** Rivera-Molina to deposit with the Clerk of Court all rental-property proceeds generated from April 1, 2021, to September 3, 2021, and to produce all the documents listed on page seventeen in Docket No. 130 for the same time period. He will comply by December 13, 2021, or he will pay a $2,000.00 fine and an additional $500.00 fine for each day after December 13, 2021, that he remains noncompliant.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of December, 2021.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES DISTRICT COURT JUDGE