IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILLIAM RIVERA-MOLINA ET AL., Plaintiffs, v. CASA LA ROCA, LLC ET AL., Defendants. | CIV. NO. 21-1004 (SCC) |

**OPINION AND ORDER**

Casa La Roca, LLC, Charles Henry Eugene Vogel, and Juanita Kay Vogel (collectively, "Casa La Roca") moved for sanctions against William Rivera-Molina, International Business Solutions, Ebano 155, Inc., and DC Project Management Corp. (collectively, "Rivera-Molina") and his attorneys under Federal Rule of Civil Procedure 11 for filing a frivolous motion to disqualify its law firm. Docket No. 110. The Court referred the motion to Magistrate Judge López-Soler for disposition. Docket No. 250. She granted it and ordered Rivera-Molina's attorneys to each pay a $750.00 fine. Docket No. 259. Rivera-Molina objects to her opinion and order, raising several claims of error. Docket No. 262.

# I.

Rivera-Molina moved to disqualify Casa La Roca's law firm on the ground that, in an earlier case, it had "consistently acted as [his] counsel," and he "at all times" reasonably believed it represented him. Docket No. 92, pg. 3; Docket No. 92-1, pg. 3. In the earlier case, Casa La Roca sued its properties' insurer, seeking insurance proceeds to repair damage caused by Hurricane María. Complaint, Vogel v. Univ. Ins. Co., No. 18-1706 (D.P.R. Sept. 20, 2018). Rivera-Molina claimed he served as the firm's "direct liaison" with the Vogel family and was their "principal/only witness." Docket No. 92, pg. 3 n.1. His handling of the day-to-day functions at Casa La Roca's properties, moreover, rendered him the Vogel family's "alter ego" in that action. *Id.* at 5–6. As the Vogel family's "alter ego," the firm "unquestionably represented and/or counseled" him and gained "particular knowledge" of him. *Id.* at 6. Rivera-Molina attached to his motion an unsworn statement under penalty of perjury where he said that he had read the motion, the information therein

is true, the firm led him to believe that his communications with it were confidential, and he believed "at all times" that the firm represented him. Docket No. 92-1, pgs. 2–3.

In opposition, Casa La Roca argued there was no conflict of interest because its law firm had never represented Rivera-Molina, never signed a retainer agreement with him, never received fees from him, and never had an attorney-client relationship with him. Docket No. 93, pg. 3. It said that his only contact with the firm was providing it with information and documents concerning Casa La Roca's insurance claims. *Id.* at 5. And it was careful never to allow him to participate in meetings between it and Casa La Roca. *Id.* at 6. Moreover, when he had met with attorneys at the firm to discuss his upcoming deposition in the insurance action, they informed him that they did not represent him, he may retain his own counsel, and attorney-client privilege did not protect the communications between them. *Id.* at 8–9. He later retained counsel, Notice of Appearance, Vogel v. Univ. Ins. Co., No. 18-1706 (D.P.R. Sept. 9, 2019), who filed only one

document, *see* Motion in Compliance, Vogel v. Univ. Ins. Co., No. 18-1706 (D.P.R. Sept. 16, 2019). In it, he stated that he retained counsel because of how "oppressive and onerous" the action had become and that he had appeared at his deposition unrepresented. *Id.* at 3.

The Court denied Rivera-Molina's motion to disqualify Casa La Roca's law firm because there was no evidence of an attorney-client relationship between him and the firm. Docket No. 103.[1] Afterwards, Casa La Roca moved for Rule 11 sanctions against Rivera-Molina and his attorneys because he had "knowingly and purposefully lied" in his unsworn statement and his counsel had "failed to conduct a

---

1. Rivera-Molina later moved for reconsideration on the ground that the Court had erred by denying his motion to disqualify Casa La Roca's law firm without holding an evidentiary hearing and based only on Casa La Roca's allegations that an attorney-client relationship never existed. Docket No. 142, pg. 7. The Court denied his motion, explaining that he had the burden of proof to show this relationship existed yet submitted only his unsworn statement under penalty of perjury, while Casa La Roca submitted a plethora of exhibits supporting its position. Docket No. 168, pg. 4. We relied on more than Casa La Roca's allegations: we relied on the evidence that corroborated them. *Id.* at 4–5.

reasonable inquiry" into his claims. Docket No. 110, pg. 2. For if his attorneys had looked at the insurance action's docket, they would have learned that his claims were false. *Id.* at 3.

Rivera-Molina responded that in denying his motion to disqualify, the Court relied on Casa La Roca's allegations regarding his relationship with its firm and never held an evidentiary hearing to ask him why he believed the firm represented him in the insurance action. Docket No. 131, pg. 6. Had the Court held a hearing, he says, he would have shown why he believed the firm represented him. *Id.* In defense of his attorneys, he stated they asked him what led him to believe the firm represented him. *Id.* at 7. Finally, he requested an evidentiary hearing. *Id.* at 8. He attached another unsworn statement reiterating that he believed the firm represented him, he participated in "preparation meetings," he had a "personal stake" in the outcome, and his attorneys asked him to explain in detail why he believed the firm represented him. Docket No. 131-1, pgs. 2–4.

The magistrate judge granted Casa La Roca's motion for Rule 11 sanctions because Rivera-Molina's attorneys failed to conduct a reasonable inquiry and if they had done so, they would have learned that their client's unsworn statement was not an adequate factual basis to support his claim that Casa La Roca's law firm represented him during the insurance action. For the insurance action's docket leaves no doubt that he never sought legal advice from the firm, the firm made it clear to him that it did not represent him, and he retained counsel. Docket No. 259, pg. 8. To deter his attorneys from failing to conduct a reasonable inquiry in the future, she fined each of them $750.00. *Id.* at 9.

Rivera-Molina objects to the magistrate judge's opinion and order on several grounds. He contends his unsworn statement provided his attorneys with a sufficient factual basis to move to disqualify Casa La Roca's law firm; the fact that he never signed a retainer agreement nor paid the firm fees, was not a party to the action, and retained counsel does not make it unreasonable that an attorney-client

relationship existed; and the magistrate judge should have held a hearing before imposing sanctions. Docket No. 262. Before we reach the merits of his objections, we address a threshold issue.

## II.

Rivera-Molina argues the magistrate judge did not have the authority to impose Rule 11 sanctions. Docket No. 262, pg. 3. Magistrate judges have the authority to "hear and determine" non-dispositive matters. 28 U.S.C. § 636(b)(1)(A); *see also* FED. R. CIV. P. 72(a). These determinations are set aside only if they are timely objected to and "clearly erroneous or contrary to law." § 636(b)(1)(A); *see also* FED. R. CIV. P. 72(a). But for dispositive matters, magistrate judges only have the authority to recommend dispositions. § 636(b)(1)(B). Section 636(b)(1)(A) provides a non-exhaustive list of dispositive matters. *See id.* (listing "a motion for injunctive relief, judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss

or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action"). Similar matters are also dispositive. *ML-CFC 2007-6 P.R. Props. v. BPP Retail Props.*, 951 F.3d 41, 47 (1st Cir. 2020).

There is "no clear, national answer to whether Rule 11 sanctions are dispositive or non-dispositive." 2 STEVEN S. GENSLER & LUMEN N. MULLIGAN, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY Rule 72, Westlaw (database updated Feb. 2022). There are two views. The first is that Rule 11 sanctions are non-dispositive if they do not dispose of a claim or defense and are dispositive if they do. *See, e.g., Gómez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519–20 (10th Cir. 1995); *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 748 (9th Cir. 1990); *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007); *Kiobel v. Millson*, 592 F.3d 78, 98 (2d Cir. 2010) (Leval, J., concurring). The second is that Rule 11 sanctions are always dispositive. *See, e.g., Alpern v. Leib*, 38 F.3d 933, 935–36 (7th Cir. 1994); *Bennett v. Gen. Castor Serv. of N. Gordon Co.*, 976

F.2d 995, 998 (6th Cir. 1992); *Kiobel*, 592 F.3d at 86 (Cabranes, J., concurring).

The First Circuit has not weighed in. *See Lancellotti v. Fay*, 909 F.2d 15, 17 n.2 (1st Cir. 1990) ("[W]e need not confront today the vexing standard-of-review question . . . on whether Rule 11 sanctions ordered by a magistrate are properly characterizable as 'dispositive' or 'non-dispositive' . . . ."). But we predict that it would adopt the first view because it favors a commonsense, functional approach to sanctions rather than a bright-line rule. *See, e.g.*, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 6 (1st Cir. 1999) (holding that motions for sanctions "ordinarily should be classified as non-dispositive" but "caution[ing] that a departure from this general rule may be necessary in those instances in which a magistrate judge aspires to impose a sanction that fully disposes of a claim or defense"); *cf. BPP Retail Props.*, 951 F.3d at 47–48 (comparing the First Circuit's approach to deciding whether a motion is dispositive to "functional" approaches that  look to the motion's potential effect on the litigation). We see no reason

why the First Circuit would adopt a different approach for Rule 11 sanctions. *See* 12 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3068.2, Westlaw (database updated Apr. 2021) ("A similar approach [to discovery sanctions] would seem to be indicated in regard to Rule 11 sanctions, although the courts have not clearly embraced it.").

Casa La Roca's motion for Rule 11 sanctions is non-dispositive. That is because it is not listed as a dispositive motion in § 636(b)(1)(A), and it falls within the "general rule" that motions for sanctions are "not of the same genre as the enumerated motions in [§ 636(b)(1)(A)]." *Phinney*, 199 F.3d at 6. To be sure, there are exceptions to this rule, such as where "a magistrate judge aspires to impose a sanction that fully disposes of a claim or defense." *Id.* But here, like in *Phinney*, the magistrate judge "imposed only a monetary sanction" and, thus, her order is "non-dispositive" and subject to review under the "'clearly erroneous' standard." *Id.* In an abundance of caution, however, we will review de novo. For we would affirm under both standards.

### III.

We turn to the merits of Rivera-Molina's objections, beginning with his argument that the magistrate judge should have held a hearing before imposing sanctions.

Generally, it is best practice to hold a hearing before imposing monetary sanctions under Rule 11. *Media Duplication Servs., Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1238 (1st Cir. 1991); *see also Schaifer Nance & Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 335–36 (2d Cir. 1999) (acknowledging that "although granting a hearing for oral argument would generally be the better practice," "the opportunity to submit written briefs may be sufficient to provide an opportunity to be heard."). That is especially true "where the sanction is a fine designed to go beyond compensation and punish an attorney." *Media Duplication Servs.*, 928 F.2d at 1238. But it is not required in every case. *Id.*; *see also Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 607 (1st Cir. 1988) (filing a Rule 11 motion and the briefing process provided notice and adequate opportunity to present evidence and arguments).

The magistrate judge declined to hold an evidentiary hearing because the parties had fully briefed the issues, so a hearing would not have been helpful. Docket No. 259, pg. 9 n.3. Rivera-Molina argues that she erred when she determined that the statements in his unsworn statement under penalty of perjury were false without holding a hearing. *See* Docket No. 262, pgs. 19–20; *see also* Docket No. 275, pgs. 8–9. Her analysis, however, hinged on "whether a competent attorney . . . after 'reasonable inquiry' would have known the assertions to be insufficient to establish an attorney-client relationship warranting the disqualification" of Casa La Roca's law firm. Docket No. 259, pg. 6. The parties' filings provided the information that she needed: Casa La Roca described the evidence in the insurance-action docket that it claims a reasonable inquiry would have uncovered, and Rivera-Molina explained the inquiry that his attorneys conducted. We agree with her that an evidentiary hearing would not have been helpful here. Indeed, the evidence Rivera-Molina claims he should have been allowed to present

in a hearing do not go to the issue here (*i.e.*, whether his attorneys undertook a reasonable inquiry before filing their motion to disqualify)—it goes to issues that the Court has already decided. Docket No. 262, pg. 21 ("The determination of whether or not there was an attorney-client relationship between William Rivera Molina and [Casa La Roca's law firm] is a factual determination that cannot be made without receiving evidence."). Because Rivera-Molina did not direct the magistrate judge to any controverted factual issue regarding his attorneys' inquiry and the briefing process permitted him to file an opposition with evidence and arguments against Rule 11 sanctions, the magistrate judge did not err by failing to hold an evidentiary hearing.

We turn to Rivera-Molina's other objections. First, he contends his unsworn statement—standing alone—provided his attorneys with a sufficient factual basis to move to disqualify Casa La Roca's law firm. Second, he argues the fact that he never signed a retainer agreement nor paid the firm fees, was not a party to the action, and retained counsel does

not make it unreasonable that an attorney-client relationship existed between him and the firm during the insurance action. The magistrate judge disagreed based on the overwhelming evidence against an attorney-client relationship that was readily available to his attorneys in the insurance-action docket. She pointed out the following: Rivera-Molina was not a party to the action, but rather a third-party witness; he appeared at his deposition without counsel then later retained counsel (who was not a member of Casa La Roca's law firm); the firm stated many times in his presence at the deposition that it did not represent him; and he stated many times at the deposition that he needed to look for and consult with an attorney. Docket No. 259, pgs. 7–8.

Rule 11 provides, as relevant, that an attorney who files a document with the court certifies that "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." FED. R. CIV. P. 11(b), (b)(3). If an attorney violates Rule 11, the court may impose "appropriate

sanction[s]" "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1).[2] In general, a factual contention has evidentiary support if there is some proof for it at the time of filing. *See Navarro-Ayala v. Hernández-Colón*, 3 F.3d 464, 466 (1st Cir. 1993) (Breyer, J.) ("[T]he object of Rule 11's inquiry requirement is to avoid filings that are baseless," *i.e.*, "without adequate factual grounding."). But if other proof raises serious doubts—or red flags—about whether the assertion is genuinely supported, the attorney must inquire further. *See City of Livonia Emps. Retirement Sys. & Loc.295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013) (stating that attorneys cannot use "ostrich tactics" when they encounter red flags, instead they must inquire further). Whether the evidentiary support is adequate is an objective inquiry. *In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021). Thus, the question is whether a reasonable attorney would have thought that there

---

2. A motion for sanctions must comply with specific procedural requirements. *See* Fed. R. Civ. P. 11(c)(2). These appear to have been followed here, and Rivera-Molina has not argued otherwise.

was adequate evidentiary support to make the allegation.
And before making the allegation, the attorney must conduct
an inquiry that is reasonable under the circumstances. *See id.*;
*see also* Fed. R. Civ. P. 11 adv. comm. notes 1983 amend.
(stating the touchstone for the pre-filing duty to inquire is
"reasonableness under the circumstances"). "Factors to be
considered include 'the complexity of the subject matter, the
party's familiarity with it, the time available for inquiry, and
the ease (or difficulty) of access to the requisite information.'"
*In re Ame*s, 993 F.3d at 34 (quoting *Navarro-Ayala v. Nuñez*, 968
F.2d 1421, 1425 (1st Cir. 1992)). Moreover, an attorney who
makes unsupported factual allegations "must, at the very
least, be culpably careless" to violate Rule 11(b). *Young v. City
of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005).

We turn to whether a reasonable attorney would have
thought that there was adequate evidentiary support to move
to disqualify Casa La Roca's law firm on the ground that it
had an attorney-client relationship with Rivera-Molina

during the insurance action.[3] And we focus on three factual contentions in particular: (1) Casa La Roca's law firm "consistently acted as counsel" for Rivera-Molina during the insurance action, (2) this representation was "long and substantial," and (3) "for years, he reasonably considered" the firm his attorneys. Docket No. 92, pgs. 3, 9. The only evidentiary support his attorneys had for these contentions is his unsworn statement under penalty of perjury. To be sure, attorneys can generally rely on what their client tells them for evidentiary support. *In re Taylor*, 655 F.3d 274, 284 (3d Cir.

---

3. The District of Puerto Rico has adopted the Model Rules of Professional Conduct. D.P.R. Civ. R. 83E(a). Under those rules, an attorney "who has formerly represented a client in a matter" cannot represent someone else "in the same or a substantially related matter in which that person's interests are materially adverse to [those] of the former client unless the former client gives informed consent, confirmed in writing." MODEL RULES OF PRO. CONDUCT r. 1.9 (AM. BAR ASS'N). For this rule to apply, Casa La Roca's law firm must have had an attorney-client relationship with Rivera-Molina. Under Puerto Rico law, an attorney-client relationship is formed when "a potential client seeks the advice or representation of an attorney on a legal issue." *Campos-Matos v. Evanstone Ins. Co.*, 208 F. Supp. 2d 170, 173 (D.P.R. 2002) (citing *In re Belén Trujillo*, 126 D.P.R. 743, 756 (P.R. 1990)). Because there is no conflict unless there was an attorney-client relationship, our inquiry focuses on whether there was a sufficient factual basis to believe the firm represented him during the insurance action.

2011) (stating it is "usually reasonable for a lawyer to rely on information provided by a client, especially where that information is superficially plausible"); *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993) (same); *see also* FED. R. CIV. P. 11 adv. comm. notes 1983 amend. (explaining that what constitutes a reasonable inquiry may depend on whether the attorney had to "rely on a client for information as to the facts underlying the . . . motion"). But attorneys cannot blindly rely on what their clients tell them when red flags would cause a reasonable attorney to conduct a further inquiry.

The first red flag is the timing of the motion to disqualify. It is unusual that someone would sit back for six months of highly contentious litigation before complaining that his adversaries' attorneys represented him for years.[4]

---

4. Indeed, according to Rivera-Molina's allegation that Casa La Roca's law firm represented him during the insurance action, it represented him and helped someone file a lawsuit against him at the same time. Casa La Roca filed the insurance action in September 2018, and that action ended in March 2021. It filed the current action in January 2021. Seeing this overlap, any reasonable attorney would have done more than merely ask his client why he thought the firm represented him during the insurance action.

There is also a plethora of red flags in the insurance-action docket that would cause any reasonable attorney to doubt whether Rivera-Molina believed "for years" and "at all times" that he had an attorney-client relationship with Casa La Roca's law firm. First, an attorney who is not associated with that firm entered an appearance on his behalf less than one year into the action. *Compare* Complaint, Vogel v. Univ. Ins. Co., No. 18-1706 (D.P.R. Sept. 20, 2018), *with* Notice of Appearance, Vogel v. Univ. Ins. Co., No. 18-1706 (D.P.R. Sept. 9, 2019). Second, before he retained counsel, Rivera-Molina gave a deposition where he admitted he appeared without counsel. Motion in Compliance, Vogel v. Univ. Ins. Co., No. 18-1706 (D.P.R. Sept. 16, 2019). That is significant because one of the attorneys who he says he believed "at all times" was his appeared at that deposition as well. *See* Exhibit 1 at 4, Vogel v. Univ. Ins. Co., No. 18-1706 (D.P.R. Sept. 16, 2019); Docket No. 93-11, pg. 1. Indeed, it would have been strange if Casa La Roca's attorneys had not appeared when the insurance company deposed him, the "principal/only witness." Third,

he informed the Court he had retained an attorney because the process of complying with discovery requests had "turned oppressive and onerous." Motion in Compliance at 3, Vogel v. Univ. Ins. Co., No. 18-1706 (D.P.R. Sept. 16, 2019). This indicates that he did not have representation earlier.

Moreover, had Rivera-Molina's attorneys requested and examined his deposition—which Casa La Roca's attorneys would have had—they would have learned that he appeared without counsel but claimed one of his businesses had an attorney, Docket No. 93-11, pgs. 12, 133; he said he would need to first retain then consult with an attorney before answering specific questions or complying with specific requests, *id.* at 15, 50, 131; and Casa La Roca's attorneys said they did not represent him, *id.* at 23, 28, 109.

The timing of the motion is a red flag. The fact that Rivera-Molina retained counsel who is not associated with Casa La Roca's law firm is a red flag. His counsel's only filing where he says he appeared at his deposition without representation and he had retained counsel because of how

oppressive and onerous the lawsuit had become for him is a red flag. The exhibits attached to that filing, moreover, reflect that one of Casa La Roca's attorneys who he claims was his attended the deposition where he later said he was unrepresented. That is another red flag. Finally, the deposition is full of red flags: It shows that Rivera-Molina claimed he would need to find and consult with an attorney and that one of Casa La Roca's attorneys who he claims was his repeatedly said she did not represent him. These are all red flags that cast serious doubt on the veracity of Rivera-Molina's claim he had "at all times" and "for years" believed Casa La Roca's attorneys were in fact his. When an attorney encounters red flags, he cannot ignore them. Instead, he must conduct a further inquiry into the factual contentions before he presents them in a filing to the court. Rivera-Molina's attorneys did not do so. They say, and their client agrees, they merely asked Rivera-Molina why he believed he had an attorney-client relationship with Casa La Roca's law firm during the insurance action. A reasonable inquiry would have

included at a bare minimum looking at the insurance action's docket. And when his attorneys encountered the red flags there, a reasonable inquiry required even more.

Weighing the *Ames* factors, the circumstances here required a greater inquiry than merely asking the client why he believed he had an attorney-client relationship with Casa La Roca's law firm. 993 F.3d at 34 ("Factors to be considered include 'the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information.'" (quoting *Navarro-Ayala*, 968 F.2d at 1425)). First, the existence of an attorney-client relationship is not complex—all attorneys should know what creates an attorney-client relationship and how to look for evidence of one. Second, Rivera-Molina's attorneys have not claimed that they had limited time to conduct an inquiry. Instead, they claim that their client's unsworn statement alone is a sufficient factual basis. Nor have they argued that it would have been difficult for them to access the insurance-action docket or request Rivera-Molina's

deposition. Both are easy enough to do and are not time consuming. The failure to look at the insurance-action docket for evidence of an attorney-client relationship is "culpable carelessness." Any reasonable attorney would have done so here. And upon seeing the red flags there, any reasonable attorney would have inquired further before alleging in a document submitted to the Court that Rivera-Molina reasonably believed "at all times" and "for years" that Casa La Roca's law firm represented him in the insurance action.

In short, this is not a situation where further inquiry would have revealed facts that merely weaken or undermine Rivera-Molina's claim that he reasonably believed "at all times" and "for years" that Casa La Roca's law firm represented him during the insurance action. Rivera-Molina's attorneys failed to conduct an inquiry that is reasonable under these circumstances and had they conducted one, they would have discovered that the factual allegations in the motion to disqualify were baseless (*i.e.*, lacked an "adequate factual grounding"). *See Navarro-Ayala*, 3 F.3d at 466 (explaining that

sanctions are proper where a reasonable inquiry would have shown that the motion lacks "adequate factual grounding," not where further inquiry would have merely weakened or undermined it). Thus, Rivera-Molina's attorneys violated Rule 11.

Rule 11 sanctions must be "appropriate." FED. R. CIV. P. 11(c)(1). They serve two main purposes: deterrence and compensation. *Navarro-Ayala*, 968 F.2d at 1426. Where they are used for deterrence, they should be proportionate to the violative conduct. *Id.* at 1427. A small fine of $750.00 against each of Rivera-Molina's attorneys who signed the motion to disqualify is proportionate to their culpably careless conduct. *Mariana v. Doctors Assoc., Inc.*, 983 F.2d 5, 9 (1st Cir. 1993) ("Rule 11 sanctions may be imposed only upon individual attorneys who have signed sanctioned papers.").

## IV.

In sum, the Court **adopts in full** Magistrate Judge López-Soler's opinion and order (Docket No. 259). For the reasons she has given and the reasons above, we **GRANT**

Casa La Roca's motion for Rule 11 sanctions (Docket No. 110).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of April 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE